[Civ. No. 6891. Fourth Dist. Dec. 19, 1963.]

MARY ELIZABETH RIGGS, Plaintiff and Respondent, v. WILBERT RIGGS, Defendant and Appellant.

Wilbert Riggs, in pro. per., for Defendant and Appellant.

Charles E. Parker, Blodget, Cochran & Anderson and William L. Anderson for Plaintiff and Respondent.

COUGHLIN, J.—The parties hereto are husband and wife; were married in Spokane, Washington, on September 6, 1939, and separated June 5, 1959; at the time of separation were residents of the State of Washington, where they had resided the major part of their married life; during marriage acquired real property located in that state; and were the parents of four daughters who, respectively, were 19, 16, 15 and 9 years of age at the time of trial.

On the date of separation, i.e., June 5, 1959, the plaintiff-wife and one daughter left Washington; came to Orange County, California; and stayed with the wife's father at the latter's home. The other three daughters remained with their father, the defendant. The plaintiff testified that she and the defendant had agreed to a temporary separation for one year during which time she was to come to California and obtain a teaching position. Shortly after arriving in Orange County the plaintiff applied for and obtained a teaching position in Vista, which is in San Diego County. In July, the plaintiff with her father, returned to Washington; obtained some furniture and personal belongings which her father was to assist her in moving; and, with the three daughters, came back to California. At this time the defendant was in a hospital recovering from an operation.

Thereafter the plaintiff and the four daughters moved to Vista, in San Diego County, where they established their residence.

In October, the plaintiff filed the instant action for separate maintenance in Orange County. Thereafter, the defendant came to California to visit his wife and daughters, and while here was served with the separate maintenance complaint. In due course he filed an answer. The issues thus raised were tried in March 1961. In the meantime the plain-

tiff, although maintaining her residence in San Diego County, filed an action for divorce against the defendant in Orange County. The latter filed an answer thereto. The issues thus joined were consolidated for trial with those in the separate maintenance action.

After trial, the court found that the plaintiff was not a resident of the County of Orange at the time the divorce action was instituted and, for this reason, denied a divorce. At the same time it decreed that the plaintiff was entitled to separate maintenance; awarded her support in the sum of $1.00 per year; gave her custody of the four minor daughters; ordered the defendant to pay her the sum of $75 per month for each daughter during the latter's minority, found that five parcels of real property of the parties in the State of Washington were community; awarded three of these parcels to the plaintiff and two thereof to the defendant; and directed the defendant to pay to plaintiff's counsel the sum of $250 attorney's fees and $25 court costs.

The defendant appeals from the judgment and contends (1) that the evidence is not sufficient to support the findings and judgment; (2) that the court erred with respect to its ruling upon the admission of evidence; and (3) that it did not have jurisdiction of the action or of the real property, which was located in Washington.

The propriety of the judgment entered herein requires an examination of the pleadings, the findings with respect to the issues raised thereby, and the conclusions of law which followed. By her complaint the plaintiff alleged, in paragraph III, that the community property of the parties consisted of real property located ''on Cliff Avenue, Spokane, Washington, . . . at 1424 Sixth Avenue, Spokane, Washington,'' and ''at Newman Lake, Spokane County, Washington,'' together with certain ''miscellaneous household furniture and appliances,'' and also ''cash on hand in various banks, and in the custody of the defendant''; in paragraph IV, that since the marriage of the parties ''defendant has treated plaintiff with extreme cruelty and has wrongfully inflicted upon her grievous mental suffering and grievous bodily injury''; in paragraph V, that the minor children of the parties were in the custody of the plaintiff who was a fit and proper person to be awarded such; and in paragraph VI, that it was necessary for plaintiff to employ counsel to represent her, that she ''has incurred and will incur in the future expenses for reasonable attorney's fees and court costs herein'' and that

she was "without funds or property to maintain or support herself and said minor children either permanently or during the pendency of this action, but defendant has the ability to pay reasonable sums for each and all of said items." The defendant's answer denied and put in issue the foregoing allegations. The findings of the court, insofar as they are pertinent to the decision herein, declared: "Paragraph I through VI of the complaint are true. Paragraphs I through V, inclusive, of the answer to the complaint are true insofar as they agree with the above findings of the complaint and are not true insofar as they disagree with the above findings of the complaint ... ." The conclusions of law were limited to a determination that the court had jurisdiction to grant the judgment for separate maintenance; over the custody of the children; to determine that the property of the parties was community; and to make an award thereof.

In many respects the judgment herein patently is not supported by the foregoing findings or conclusions. ■ Findings of fact and conclusions of law constitute the decision of a court. (Code Civ. Proc. § 632; generally see: 28 Cal.Jur.2d 682, 683, and cases cited therein.) The judgment is not the decision; is entered following such (Code Civ. Proc., § 664); but must conform thereto (*Mather* v. *Mather,* 22 Cal.2d 713, 718 [140 P.2d 808]; *Nestor* v. *Burr,* 124 Cal.App. 369, 371-372 [12 P.2d 479]); and if it fails to do so is erroneous. (*Lyden* v. *Spohn-Patrick Co.,* 155 Cal. 177, 182 [100 P. 236]; *Nestor* v. *Burr, supra,* 124 Cal.App. 369, 372.)

■ The judgment at bar orders the defendant to pay the plaintiff $75 per month for the support and maintenance of each of the minor children; further orders him to pay the sum of $250 attorney's fees and $25 court costs. Such orders are dependent upon findings that there is a need for the payments directed, and that the defendant has the ability to make such. (*Pearman* v. *Pearman,* 104 Cal.App.2d 250, 252 [231 P.2d 101]; *Muse* v. *Muse,* 102 Cal.App.2d 894, 895 [228 P.2d 599]; *Cline* v. *Cline,* 132 Cal.App. 713, 715 [23 P.2d 431]; cf. *Hooper* v. *Fletcher,* 145 Cal. 375, 378 [79 P. 418].) The findings at bar are silent with respect to these matters and, for this reason, do not support the judgment entered. In this regard it should be noted that the evidence establishes without contradiction that one of the minor children in question, the eldest daughter, was "self sufficient."

■ The three parcels of real property awarded to the plaintiff represent approximately 60 per cent of the value of the

total property owned by the parties. There is no finding of fact or conclusion of law supporting a distribution of the community property on a 60-40 basis in favor of the plaintiff. Section 146 of the Civil Code directs that if a decree for separate maintenance is rendered on the ground of extreme cruelty "the community property shall be assigned to the respective parties in such proportions as the court, from all the facts of the case, and the condition of the parties may deem just." Except for the fact that the defendant was found guilty of extreme cruelty toward the plaintiff, the findings do not furnish any circumstance upon which the court might have based an exercise of its discretion in the premises, and the conclusions of law are silent with respect to the manner in which said discretion had been exercised. In this regard it is noteworthy that the finding with respect to extreme cruelty determined that the defendant had wrongfully inflicted upon the plaintiff "grievous mental suffering *and* grievous bodily injury." (Italics ours.) There is not an iota of evidence that the defendant inflicted any bodily injury upon the plaintiff. If the court's division of the community property, as reflected in the judgment, was based upon the finding that the defendant had been guilty of inflicting both mental suffering and bodily injury, its determination in the premises is not supported by the evidence.

 It also should be noted that the community property of the parties is described in the judgment by a lot and block, or metes and bounds description. This did not conform to the description of the property contained in the findings of fact. A review of the evidence indicates that the same property is referred to in the judgment and the findings, so that any error in failing to establish that the different descriptions identify the same property is not prejudicial. Nevertheless, we deem it appropriate to refer to this discrepancy in order that there be no recurrence of this error.

 The defendant's contention that the evidence is insufficient to sustain the finding of extreme cruelty, insofar as it attacks that part thereof which determined that he had inflicted "grievous bodily injury" upon the plaintiff, is of unquestioned merit. As heretofore noted, there is no evidence in support of this charge. The evidence to the contrary is uncontradicted.

The primary basis for the plaintiff's complaint was the fact that she had been "faced with a number of arguments" between herself and her husband, which "were a daily oc-

currence.'' The subjects of these arguments were varied; concerned politics, discipline of the children, the plaintiff's housekeeping, the manner in which the defendant paid his bills, the maintenance of rental properties owned by the parties, the cost of repairing an automobile, and the cost of medical examinations for the children. The evidence indicates that the source of most of these arguments was the lack of finances to do the things the plaintiff believed should be done, and the defendant's belief that because of this fact they should not be done. On cross-examination the plaintiff admitted that their arguments could be classified as differences in points of view; that they had ''differences of opinion''; that although there were times when her husband became angry and lost his temper she ''naturally'' from time to time also became angry and lost her temper. It also was established that in the course of their arguments the defendant did not use ''vulgar'' language nor any ''profanity,'' although his remarks were ''derogatory'' and to this extent the plaintiff felt they were ''abusive.''

There was no direct evidence that the course of conduct to which the plaintiff objected caused her grievous mental suffering. The only testimony in this regard was that it made her nervous.

''To constitute extreme cruelty sufficient to support a decree of divorce when no bodily injury is involved, there must be a showing that the offending spouse's conduct has caused the plaintiff *grievous mental suffering*.'' (*Farrand* v. *Farrand*, 77 Cal.App.2d 840, 841 [176 P.2d 773].) ▪ Proof that the allegedly innocent party was nervous and upset as a result of the conduct of the allegedly offending party of itself is not sufficient to establish grievous mental suffering. (*Negley* v. *Negley*, 82 Cal.App.2d 355, 356-358 [186 P.2d 151]; *Farrand* v. *Farrand*, *supra*, 77 Cal.App. 2d 840, 841; *Truax* v. *Truax*, 62 Cal.App.2d 441, 443 [145 P. 2d 88].) ▪ On the other hand, ''where the acts complained of 'were such as to inevitably cause grievous mental suffering,' the trial judge is justified in drawing the inference of such suffering from those acts.'' (*Negley* v. *Negley*. *supra*, 82 Cal.App.2d 355, 358.) ▪ The effect of such acts as the basis for such an inference is related to the ''intelligence, refinement and delicacy of sentiment of the complaining party.'' (*Keener* v. *Keener*, 18 Cal.2d 445, 447 [116 P.2d 1].) ▪ Ordinarily, whether grievous mental suffering has been established is a question of fact; depends in large measure ''upon the sound sense and judgment'' of

the trial judge who is in a position to observe the intelligence, refinement and delicacy of sentiment of the complaining party; and his decision with respect thereto "will not be disturbed unless the evidence is so slight as to indicate an abuse of discretion." (*Keener* v. *Keener, supra,* 18 Cal.2d 445, 447.)

Measured by the foregoing rules, the gravity of the defendant's contention that the evidence in this case is not sufficient to establish grievous mental suffering is apparent. However, we do not propose to hold that it is so slight as to indicate that the finding in the premises resulted from an abuse of discretion because, for other reasons, the judgment herein must be reversed, and the issue of mental cruelty, as determined on a new trial, will be dependent upon the evidence then presented rather than that now before this court.

 The reason for commenting upon the weakness in the plaintiff's case to support her charge that mental cruelty is its relation to an error of the court with respect to the defendant's offer into evidence of the depositions of six witnesses which had been taken pursuant to stipulation. The plaintiff objected to the introduction of these depositions on the ground that the witnesses "were not parties who had an opportunity to view the circumstances that have given rise to this action." In response to this objection the court said: "Well, of course, I haven't read the depositions, so I don't know." No order was made with respect to the defendant's offer, nor the plaintiff's objection thereto. It does not appear that the court read the depositions in question. To the contrary, as soon as the case was concluded the trial judge indicated his intention to find that the defendant had been guilty of extreme cruelty. The offered evidence, if accepted by the court, would have established that the plaintiff did not sustain grievous mental suffering as a result of the conduct about which she complained. Her testimony established that the arguments to which she objected, with two exceptions, did not occur in the presence of anyone other than her children. Under these circumstances, the conclusion could not be drawn that she was humiliated by anything which the defendant might have said. The two exceptions involved instances which were trivial and inconsequential. The testimony of the deposition witnesses would have supported the conclusion that the relationship between the plaintiff and defendant was a happy one; that a similar relationship existed between the defendant and his children; and

would negative any inference of mental anxiety on the part of the plaintiff resulting from the conduct about which she complained. One of these witnesses was a medical doctor who had attended the plaintiff for a number of years; who had performed a major operation upon her in October 1957; who testified that although the plaintiff had discussed with him many matters of a nonmedical nature, she never complained about her marital life; and who gave his opinion that plaintiff's health was better when he saw her in 1959 than it had been for the previous four or five years. No objection was made to the testimony of the doctor on the ground that it was privileged. Whether the testimony in question was privileged, and if so, whether the privilege has been waived,[1] are issues which should not be determined on this appeal.

The failure of the trial court to pass upon the defendant's offer to place in evidence the testimony of the deposition witnesses was prejudicial error.

The defendant's contention that the court did not have jurisdiction in the premises is without merit. His appearance in the action conferred jurisdiction upon the court to enter a personal judgment against him with respect to all matters attendant upon a determination of the issues there presented. (*Sampsell* v. *Superior Court*, 32 Cal.2d 763, 773 [197 P.2d 739].) The fact that the defendant was a resident of the State of Washington did not deprive the court of jurisdiction to determine pertinent issues in the separate maintenance action. (*Hiner* v. *Hiner*, 153 Cal. 254 [94 P. 1044].) Although it did not have jurisdiction to determine title to the real property situated in the State of Washington, it did have jurisdiction to determine the character of that property, and to declare the rights and equities of the plaintiff and defendant with respect thereto. (*Rozan* v. *Rozan*, 49 Cal.2d 322, 330-331 [317 P.2d 11].)

The judgment is reversed and a new trial ordered.

Griffin, P. J., and Brown (Gerald), J., concurred.

---

[1] A patient may waive the privilege attendant upon a doctor-patient relationship by failing to claim such; failing to object to testimony respecting matters arising out of such; or disclosing the elements which are the subject of such testimony by bringing an action which places them in issue. (*City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227, 232-233 [231 P.2d 26, 25 A.L.R.2d 1418]; *Lissak* v. *Crocker Estate Co.*, 119 Cal. 442, 445-446 [51 P. 688].)